1

2                                                    FILED IN THE
                                                 U.S. DISTRICT COURT
                                             EASTERN DISTRICT OF WASHINGTON

3                                      Mar 04, 2022

4                                              SEAN F. McAVOY, CLERK

5                    UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF WASHINGTON

7   PIERRE BUSTANOBY, an
    individual; and JENNIFER              NO:  2:20-CV-200-RMP
8   HOPKINS, an individual,

9                          Plaintiffs,    ORDER GRANTING IN PART AND
                                          DENYING IN PART PLAINTIFFS'
                                          MOTION TO ENFORCE
10         v.                             JUDGMENT AND ISSUE
                                          SANCTIONS
11  PRESERVER TRANS, LLC, a
    foreign corporation; REHMAN
12  HAYAT and JANE DOE HAYAT,
    individually and on behalf of the
13  marital community comprised
    thereof; and JOHN and JANE DOES
14  1-25,

15                         Defendants.

16

17         BEFORE THE COURT, without oral argument, is a Motion to Enforce

18  Judgment and Issue Sanctions by Plaintiffs Pierre Bustanoby and Jennifer Hopkins,

19  ECF No. 22.  Having reviewed the motion, responsive filings, the record, and

20  relevant law, the Court is fully informed.

21

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION TO ENFORCE JUDGMENT AND ISSUE SANCTIONS ~ 1

## I.    BACKGROUND

On June 1, 2020, Plaintiffs filed their complaint in this Court, alleging negligence against Defendants Preserver Trans, LLC ("Preserver") and Rehman Hayat based on a car collision involving Mr. Bustanoby and Mr. Hayat.  ECF No. 1. Mr. Hayat was working as a licensed commercial tractor-trailer driver for Preserver at the time of the collision.  *Id.*  Following a mediation in July 2021, the parties executed a settlement agreement and notified the Court that the parties "expect to file a dismissal in this matter shortly."  ECF No. 17.  The settlement agreement required defense counsel to "provide prospective release documents to plaintiffs' counsel on or before Friday, July 23, 2021."  ECF No. 22-2 at 15.  Plaintiffs' counsel submits that he inquired about the prospective release on July 26 and July 28, 2021, but he did not receive the release until the evening of July 29, 2021, six days later than agreed upon.  ECF No. 22-1 at 2.

Plaintiffs returned the release on Friday, June 30, 2021, with multiple proposed modifications, which Defendants accepted on August 4, 2021.  ECF Nos. 22-1 at 2, 24 at 2–3.  The release stated that Defendants' insurer would pay Pierre Bustanoby $689,279.05 and pay Jennifer Hopkins $50,000.00, for a total of $739,279.05.[1]  ECF No. 22-2 at 20.  Defendants' insurer would make the agreed

---

[1] Plaintiffs' counsel correctly calculated the settlement amount owed to Plaintiffs in an email to Defense counsel sent on September 14, 2021.  *See* ECF No. 22-2 at

1    upon payments "on or before three weeks have elapsed after release documents are

2    executed by the parties." *Id.* at 15.  Plaintiff executed the release agreement on

3    August 7, 2021.  ECF Nos. 22-2 at 24, 24-1 at 25.  Per the terms of the settlement

4    agreement, which was incorporated by reference in the later release, Defendants'

5    insurer was required to make the $739,279.05 payment by August 28, 2021.  ECF

6    Nos. 22-2 at 15; *see also id.* at 24 (integrating the prior settlement agreement into the

7    release).

8        The parties filed a settlement status report with the Court on August 13, 2021.

9    ECF No. 17.  On September 2, 2021, the Court entered a text order directing the

10   parties to file either a status report or dismissal documents by September 7, 2021.

11   When that deadline passed without any documents being filed, the Court ordered the

12   parties to file either a settlement status report or dismissal documents by September

13   13, 2021.  ECF No. 18 at 2.  The parties complied and filed a stipulated motion to

14

15    ───────────────

16   56.  In the instant motion, Plaintiffs' counsel incorrectly states that "Defendants'

17   Insurer was required to pay $742,841.48 to the Plaintiffs, consisting of a payment

     of $692,841.48 to Mr. Bustanoby and $50,000 to Jennifer Hopkins."  ECF No. 22-

18   1 at 4 (citing ECF Nos. 22-2 at 13, 20).  However, the release agreement that

     Plaintiffs cite for support states that Mr. Bustanoby was owed $689,279.05,

19   approximately $3,500.00 less than the amount asserted in the instant motion.  The

20   Court relies on the amount stipulated to in the release agreement provided by both

21   parties.  ECF Nos. 22-2 at 20, 24-1 at 14.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION TO ENFORCE JUDGMENT AND ISSUE SANCTIONS ~ 3

dismiss the case with prejudice.  ECF No. 19.  The Court granted the motion and entered judgment on September 13.  ECF Nos. 20, 21.

Between early August through late September 2021, counsel for Plaintiffs inquired about the status of the settlement checks multiple times.  ECF No. 22-1 at 4–7.  Plaintiffs argue that Defendants raised "[m]ultiple new issues . . . for the first time[,]" and re-raised a Medicare issue regarding a conditional payment demand.  ECF No. 22-1 at 6.  Defendants counter that Plaintiffs "did not produce all documents between themselves and Medicare" or "a copy of the check showing satisfaction of Medicare's final conditional payment demand."  ECF No. 24 at 3.  On September 22, 2021, Plaintiffs received the settlement checks, 25 days after the August 28, 2021 deadline triggered by the execution of the release on August 7, 2021.[2]  ECF No. 22-1 at 7; *see also* ECF No. 22-2 at 15.

On October 8, 2021, Plaintiffs filed the instant motion to enforce judgment and impose sanctions for the late payment of settlement funds.  ECF No. 22.  Plaintiffs argue that they are entitled to $9,764.00 in interest for the late payment, $2,542.70 in attorney's fees, $443.58 in paralegal fees, and post-judgment interest.  *Id.* at 11.

---

[2] Plaintiffs argue that the settlement checks were due on August 13, 2021, exactly three weeks after July 23, 2021, when Defendants agreed to provide a prospective release form.  ECF No. 22 at 2; *see also* ECF No. 22-2 at 15 (setting the prospective release deadline).

## II.   JURISDICTION

Federal courts "have ancillary jurisdiction to enforce a settlement agreement only 'if the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal.'"  *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963 (9th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)).  For example, an order of dismissal may incorporate a provision to retain jurisdiction over the settlement agreement or incorporate the terms of the settlement agreement in the order.  *Id.*  A district court retains even broader ancillary jurisdiction over a dispute for attorney's fees that, unlike the court's jurisdiction to enforce a settlement agreement, need not be "explicitly 'retained.'"  *Id.* at 970.

Here, the Court's Order of Dismissal stated that the Court would retain jurisdiction "to enforce the settlement agreement reached between the parties" should such a need arise.  ECF No. 20 at 2.  Accordingly, the Court has ancillary jurisdiction to enforce the terms of the settlement agreement and to rule on the parties' dispute regarding prejudgment interest and attorney's fees.

## III.   LEGAL STANDARD

"The construction and enforcement of settlement agreements are governed by principles of local [state] law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989).  Moreover, in federal diversity

actions, "[s]tate law generally governs awards of prejudgment interest." *Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 961 (9th Cir. 2008).

Under Washington law, prejudgment interest is allowable when (1) "an amount claimed is 'liquidated'" or (2) "the amount of an 'unliquidated' claim is for an amount due upon a specific contract for the payment of money and the amount due is" readily determinable based on "a fixed standard contained in the contract, without reliance on opinion or discretion." *Prier v. Refrigeration Eng'g Co.*, 74 Wash. 2d 25, 32 (1968).

A liquidated sum includes "a specific sum of money named in and covenanted to be paid by an express contract, where the liability to pay the principal sum is undisputed." *Id.* at 32–33. In contrast, damages based on expert testimony that provides only estimates as to the authorized hours for in-home care payments, thereby failing to indicate "the exact amount of damage. . . . are neither liquidated nor ascertainable" and "prejudgment interest is unavailable." *Rekhter v. State, Dep't of Social and Health Servs.*, 180 Wash. 2d 102, 125 (2014). Absent a different rate agreed upon in writing, prejudgment interest is set at a rate of twelve percent per annum. RCW 19.52.010(1).

Separately, federal district courts have inherent authority to sanction conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Such power "must be exercised with restraint and discretion." *Id.* at 44. Sanctions may be ordered under a court's inherent power "'if the court specifically finds bad faith or conduct tantamount to bad faith. Sanctions

are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose.'" *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002) (quoting *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001)).

## IV.    DISCUSSION

A.    Prejudgment Interest

Plaintiffs argue that they are entitled to prejudgment interest in the amount of $9,764.00 based on their calculation that Defendants paid the settlement checks 40 days later than the August 13, 2021 deadline set forth in the settlement agreement. ECF No. 22 at 5–6.  Defendants counter that the agreement provided for funds to be provided by August 28, 2021, three weeks after the release was executed on August 7.  ECF No. 23 at 4 (citing ECF No. 24-1 at 11).

The principle behind prejudgment interest awards is that a party "who retains money which he ought to pay to another should be charged interest upon it."  *Prier*, 74 Wash. 2d at 34.  Prejudgment interest is unavailable where the damages are "unquantifiable and unforeseeable" because the "defendant cannot stop the running of interest by paying the plaintiff if that defendant does not know the amount due."  *Rekhter*, 180 Wash. 2d at 125.

*1.  Availability of Prejudgment Interest*

The Court first considers whether Plaintiffs' damages are readily ascertainable for purposes of awarding prejudgment interest.  The settlement terms expressly

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION TO ENFORCE JUDGMENT AND ISSUE SANCTIONS ~ 7

stated that Plaintiffs were owed $689,279.05 and $50,000.00 for a combined total of $739,279.05.  ECF No. 22-2 at 20.  Defendants concede that the parties executed the release on August 7, 2021, setting a three-week deadline for payment by August 28, 2021, per the terms of the parties' settlement agreement.  ECF Nos. 23 at 3–4; 22-2 at 15.  Moreover, Defendants do not dispute their liability for the car accident that initiated this lawsuit.  ECF No. 23 at 2.  The payment of $739,279.05 by August 28, 2021, is the kind of specific, liquidated sum that is readily determinable for purposes of awarding prejudgment interest.  *See Prier*, 74 Wash. 2d at 32.

Defendants do not dispute that the amount owed was readily determinable under the terms of the release.  Instead, they argue that prejudgment interest as a form of sanction is not appropriate because both parties created a "parade of delays that extend the date settlement funds were paid."  ECF No. 23 at 7 (internal quotation marks omitted).  The Court finds this argument unpersuasive for several reasons.  First, Defendants suggest that Plaintiffs contributed to the delay in this case by making "numerous" and "substantive changes to the Medicare provisions" of the proposed release agreement.  ECF No. 24 at 2; *cf.* ECF No. 23 at 3–4.  However, Defendants gloss over the fact that they provided the prospective release agreement six days later than provided by the settlement terms and only after Plaintiffs' counsel sent multiple follow-up emails.  *See* ECF No. 23 at 3; *cf.* ECF No. 22-2 at 15.

Next, Defendants argue that prejudgment interest is inappropriate because Plaintiffs also breached the release agreement by failing to provide certain

documents related to Medicare.  ECF No. 23 at 8.  Defendants' assertion, without

any specific citation to the record to show that Plaintiffs failed to provide certain

documents at any given point, is unavailing.  Plaintiffs, in contrast, persuasively

counter that the release agreement required Plaintiffs to produce documents and

perform various acts as "reasonably request[ed]" by Defendants.  ECF No. 24 at 2

(citing ECF No. 22-2 at 23).  The record does not support that Plaintiffs failed to

produce any requested documents.  Rather, the record reflects that Defendants

requested communication from Medicare regarding satisfaction of its lien and

Plaintiffs provided a Medicare letter "acknowledging payment in full and a zero

balance" the very next day.  ECF No. 22-2 at 37; *see also id.* at 36.  The record also

reflects that Plaintiffs' counsel reached out numerous times to see if Defendants

needed anything else, both for the prospective release and the settlement payment.

ECF No. 22-2 at 26, 31, 43, 46, 51.

Lastly, Defendants argue that sanctions are unavailable because Plaintiffs

"have not shown that Defendants' actions were reckless, frivolous, or intended to

harass."  ECF No. 23 at 9.  Defendants do not cite any authority suggesting that a

"bad faith" standard or "recklessness" standard, both of which may be relevant for

purposes of attorney's fees, apply to an award of prejudgment interest.  By

Defendants' own admission, the settlement money was due by August 28, 2021, but

was not paid until late September.  ECF No. 23 at 4–5.  In light of the record before

the Court, Defendants' characterization of the dispute as a "failure to cooperate"

between both parties is inaccurate.  *Id.* at 7.  Accordingly, the Court finds that

Plaintiffs are entitled to prejudgment interest.

### 2.    *Calculation of Prejudgment Interest*

Plaintiffs assert that the settlement money was due by August 13, 2021, and

the 40-day late payment on September 22, 2021, results in $9,764.00 owed in

interest.  ECF No. 22 at 6 (calculating interest by multiplying a settlement total of

$742,841.48 by the Washington standard interest rate of 12% for a total of

$89,097.78 in interest annually or $244.10 in interest per day; multiplying 40 days

by $244.10 for a total of $9,764.00).  There are several issues with Plaintiffs'

calculations.

First, Plaintiffs miscalculate the settlement total based on an error in the

amount of money owed to Pierre Bustanoby.  *Compare* ECF No. 22-1 at 4 (listing

the amount owed to Mr. Bustanoby as $692,841.48) *with* ECF No. 22-2 at 20 (listing

the amount owed to Mr. Bustanoby as $689,279.05).  Adding the two sums for Mr.

Bustanoby and Jennifer Hopkins results in a total settlement amount of $739,279.05

for Plaintiffs.  ECF No. 22-2 at 20.  Multiplying this amount by the 12% interest rate

provided under RCW 19.52.020(1) results in $88,713.49 owed in interest annually

or $243.05 per day.

Next, the Court rejects the 40-day total calculated by Plaintiffs for purposes of

awarding prejudgment interest.  Plaintiffs assert that "settlement funds were due to

be paid on or before August 13, 2021."  ECF No. 22 at 2.  This assumption is based

on the assertion, without any citation to legal authority or the terms of the contracted settlement terms, that the August 28, 2021 deadline "was artificially increased by Defendants unilaterally breaching the CR2A Agreement in failing to provide the release by Friday, July, 23, 2021." ECF No. 22-1 at 3.

The settlement provided that payment was owed within three weeks of the execution of the release agreement, which occurred on August 7, 2021. ECF Nos. 22-2 at 15, 45, 24-1 at 25. The delay attributable to Defendants in preparing the prospective release, while possibly frustrating, does not change the fact that the release was signed on August 7, 2021, triggering a payment deadline of August 28, 2021. Plaintiffs did not receive the payment until September 22, 2021, a delay of 25 days. ECF No. 22-1 at 7; *see also* ECF No. 25 at 2.

To summarize, the Court finds that the settlement amount of $739,279.05, based on the release agreement at ECF No. 22-2 at 20, is a sum certain because no discretion is needed to calculate this amount. Accordingly, the settlement amount is liquidated and subject to an award of prejudgment interest. The Court applies the Washington statutory rate of 12% interest in the absence of the parties' agreement to the contrary. RCW 19.52.010(1). These calculations result in $88,713.49 in interest annually or $243.05 per day. Multiplying the daily interest total by the 25-day delay that occurred in the instant case results in a prejudgment interest total of $6,076.25.

/ / /

/ / /

B.     Attorney's Fees

Plaintiffs next argue that they are entitled to attorney's fees to enforce the settlement agreement based on the Court's inherent power, 28 U.S.C. § 1927, and 35 U.S.C. § 285.  ECF No. 22 at 6.  The Court notes that attorney's fees under 35 U.S.C. § 285, which is reserved as a remedy in patent infringement cases, does not apply to this case.  The Court considers Plaintiffs' two remaining sources of authority for ordering attorney's fees.

*1.     Inherent Power: Bad Faith Conduct*

Relying on their inherent power, courts "may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975)) (internal quotation marks and citation omitted).  Under this same inherent power, sanctions are available for certain categories "of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994.  Nevertheless, "[b]ecause of their potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. Evidence of ignorance or negligence, alone, does not compel a finding of recklessness or bad faith.  *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998).

In this case, the 25-day delay in providing the agreed upon settlement money does not rise to the level of willful bad faith or reckless frivolity for purposes of

ordering attorney's fees under the Court's inherent authority.  The Court recognizes

that there were delays and gaps in communication in the final stages of this case, but

the record also shows evidence that some delays were caused by the conduct of

Defendants' insurer.  *See, e.g.*, ECF Nos. 22-2 at 26–27 (Plaintiffs' counsel twice

inquires about the status of the release agreement before Defense counsel responds

and ultimately sends the release six days late); *but see id.* at 53 (Defense counsel

notes "I am trying to get an answer from the insurer"); *id.* at 59–60 (Defense counsel

discusses plans to "address the insurer's issues and alleviate a motion to enforce

settlement); and *id.* at 64 (providing the tracking number and estimated arrival for

the settlement checks).

The approximate one-month delay in the final settlement phase of this case

may have created frustration, but it does not rise to a level of willful bad faith or

heightened recklessness on behalf of Defendants or Defense counsel.  Accordingly,

the Court declines to exercise its inherent authority to impose attorney's fees for the

instant motion.

### 2.    *28 U.S.C. § 1927: Liability for Excessive Costs*

Alternatively, Plaintiffs argues that the Court should impose sanctions

pursuant to 28 U.S.C. § 1927.  ECF No. 22 at 9.  The statute provides the following:

> Any attorney or other person admitted to conduct cases in
> any court of the United States or any Territory thereof who
> so multiplies the proceedings in any case unreasonably
> and vexatiously may be required by the court to satisfy

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION TO ENFORCE JUDGMENT AND ISSUE SANCTIONS ~ 13

personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Similar to the standard that the Court uses to determine whether to impose sanctions using its inherent authority, [a]n award of sanctions under 28 U.S.C. § 1927 . . . requires a finding of recklessness or bad faith." *Barber*, 146 F.3d at 711.  Moreover, the statutory language regarding the multiplication of proceedings "applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).

For the same reasons discussed above, the Court finds that Defendants' conduct does not rise to the level of recklessness or bad faith necessary for imposing attorney's fees under 28 U.S.C. § 1927.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion to Enforce Judgment and Issue Sanctions, **ECF No. 22**, is **GRANTED IN PART AND DENIED IN PART**.

   a.    Plaintiffs are awarded **$6,076.25** in prejudgment interest, payable by Defendants Preserver Trans LLC and Rehman Hayat, jointly and severally.

   b.    Upon entry of this final judgment, interest will accrue on Defendants' total unpaid balance at the statutory rate for federal judgments according to 28 U.S.C. § 1961 (1.135% based on the weekly average of February 22, 2022 – February 25, 2022).

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO ENFORCE JUDGMENT AND ISSUE SANCTIONS ~ 14

2.      Plaintiffs' request for attorney's fees and paralegal fees is **DENIED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter final judgment for Plaintiffs regarding prejudgment and post-judgment interest, provide copies to counsel, and close this case.

**DATED** March 4, 2022.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Senior United States District Judge